USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/22/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

UNITED STATES,

        *Plaintiff,*

   -against-

JASON MORGAN,

        *Defendant.*

---------------------------------------------------------------X

09 Cr. 699 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Defendant Jason Morgan ("Defendant" or "Morgan") moves pursuant to 18 U.S.C. § 3582(c)(1)(B) to reduce his criminal sentence under Section 404(b) of the First Step Act of 2018, 115 Pub. L. 391 § 404, 132 Stat. 5194, 5222. Having considered Defendant's motion and exhibits, the Government's opposition, and the sentencing factors set forth in 18 U.S.C. § 3553(a), the Court GRANTS Defendant's motion.[1]

## BACKGROUND

Between May 2008 and June 2009, Morgan was involved in a conspiracy to distribute crack cocaine, through which he, along with at least six others, made thirty-eight individual known sales of crack cocaine to undercover officers in an area of the Bronx. Presentence Report ¶ 16. Morgan supervised sales made by others and made seven sales himself to undercover officers during this period, each for less than one gram of crack cocaine. *Id.* at 3. On May 24,

---

[1] On February 5, 2019, Morgan filed a motion, *pro se*, seeking a sentencing reduction pursuant to 18 U.S.C. § 3582 (C)(2). Dkt. 214. Subsequently, Morgan's trial counsel filed a notice of appearance and commenced his representation of Morgan. Dkt. 219. This Order addresses Morgan's motion filed by counsel seeking relief under the First Step Act.

2010, Morgan pled guilty before Magistrate Judge Freeman to possession with intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 841(b)(1)(A). *Id.* at 3. At the time, his violation carried a mandatory minimum sentence of 10 years, and Morgan's status as a career offender stipulated an offense level of 34, a criminal history category of VI, and a resulting sentencing guideline range of 262 to 327 months. *Id.* at 4. At sentencing on September 8, 2010, Judge Scheindlin stated, "I'm going to reconsider what I had intended to do. I had intended to give a guideline sentence, the lowest end [i.e. 262 months] . . . but on further consideration, I now think that a sentence of 180 months in custody, a non-guidelines sentence, is sufficient but not greater than necessary to serve all the purposes of sentencing, to be followed by five years of supervised release." Sent. Tr., Dkt. 126, at 17, ¶¶ 2-8.

The same year Morgan was sentenced, Congress passed the Fair Sentencing Act, Pub. L. 111-220, 124 Stat. 2372 (2010). Relevant here, Section 2 of the Fair Sentencing Act raised the threshold amounts of crack cocaine necessary to trigger a mandatory ten-year or five-year minimum sentence. Pub. L. 111-220, § 2(a); Pub. L. 116-19, § 841(b)(1). Though the Fair Sentencing Act went into effect on August 3, 2010, one month before Morgan was sentenced, Judge Scheindlin determined that the Act was not applicable to Morgan's sentence. Sent. Tr. at 8, ¶¶ 2-3.[2] Had Judge Scheindlin applied the Fair Sentencing Act to his case, Morgan's mandatory minimum term of incarceration would have been 5 years instead of 10, and his offense level reduced from 34 to 31, resulting in a revised guideline range of 188-235 months. Gov. Opp., Dkt. 223, at 3-4. Morgan's mandatory minimum term of supervised release would also have been

---

[2] At the time of Morgan's sentence, Judge Scheindlin determined that the Fair Sentencing Act applied only to defendants whose relevant offenses were committed after its passage. The Supreme Court later held that the Fair Sentencing Act's reductions applied to the sentence of any defendant sentenced on or after the Act's August 3, 2010 implementation, regardless of when the offense conduct took place. *See Dorsey v. United States*, 567 U.S. 260, 281 (2012).

2

reduced from five years to four. *Id.*

Eight years later, Congress passed the First Step Act of 2018, Pub. L. 115-391, § 404(b), 132 Stat. 5194, 5220 ("the First Step Act"). Section 404 of the Fair Step Act makes Sections 2 and 3 of the Fair Sentencing Act retroactive, so that defendants previously sentenced for a "covered offense" under the Fair Sentencing Act are eligible for consideration of a reduced sentence, calculated as if the law was in effect at the time the covered offense was committed. Pub. L. 116-19, § 404(a). A "covered offense" includes any violation of a federal criminal statute that was committed before August 3, 2010 whose statutory penalties were altered by Section 2 or 3 of the Fair Sentencing Act. Pub. L. 116-19, § 404(a). Defendants meeting this criteria are eligible for a sentencing reconsideration unless: (1) their sentence was previously imposed or reduced in accordance with Section 2 and 3 of the Fair Sentencing Act; or (2) a previous motion for a sentence reduction made under Section 404 was denied after a complete review on the merits. *Id.* § 404(c).

Morgan asserts his eligibility for the reduction that he did not receive at his original sentencing. To date, Morgan has served approximately 121 months in incarceration. Def. Mot., Dkt. 219, at 4. At 38-years-old, Morgan has matured significantly from the time of his arrest; he has consistently held work detail positions throughout his incarceration, and his good behavior— interrupted only by two minor disciplinary infractions incurred in 2009 and 2010[3]— earned him relocation to a less restrictive facility than that of his initial placement. *Id.* at 5; *Id.* Ex. 6. In addition, Morgan's post-sentencing educational record is extensive, reflecting the successful completion of both vocational and rehabilitative

---

[3] Morgan received his 2009 infraction for flipping his tray during a meal and his 2010 infraction for fighting with another person. Def. Mot. Ex. 2.

3

coursework. *Id.* at 4; *Id.* Exs. 3 & 4. Pursuant to Section 404 of the First Step Act, he asks the Court to reduce his sentence of incarceration from 180 months to time served, and his term of supervised release from five years to three. *Id.* at 6.

## DISCUSSION

I. **Motions for Reconsideration under the First Step Act**

   A. **Applicable Statutory Law**

A sentence of imprisonment typically "constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *United States v. Dillon*, 560 U.S. 817, 824 (2010) (*quoting* 18 U.S.C. § 3582(b)). Two exceptions to this general rule are outlined in 18 U.S.C. § 3582(c). Section 3582(c)(1)(B) authorizes a court to modify a sentenced term of imprisonment "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure," while § 3582(c)(2) allows a defendant who has been sentenced based on a sentencing range that has since been reduced by the Sentencing Commission may be considered for a sentence reduction upon motion and with consideration of the factors outlined in 18 U.S.C. § 3553(a).

The Government urges the Court to construe Morgan's First Step Act motion as one made pursuant to 18 USC § 3582(c)(1)(B). The Court agrees that § 3582(c)(1)(B) is the proper statutory vehicle for Morgan's First Step Act motion because Morgan's sentencing range was lowered by statute, not by the Sentencing Commission, and construes it accordingly.[4] *See United States v. Martinez*, No. 04-CR-48-20 (JSR), 2019 WL 2433660, at *3 (S.D.N.Y. June 11, 2019);

---

[4] Some courts in other districts have disagreed with this interpretation. *See, e.g., United States v. Lewis*, No. CR 08-0057 JB, 2019 WL 2192508, at *19 (D.N.M. May 21, 2019).

4

*see also United States v. Rose,* 379 F. Supp. 3d 223, 232 (S.D.N.Y. 2019). ("First Step Act proceedings ostensibly fall under § 3582(c)(1)(B)").

### B. Scope of Consideration

While the First Step Act makes some defendants eligible for consideration of a reduced sentence, it does not guarantee a reduction, leaving the decision to the discretion of the court. *United States v. Davis,* 2019 WL 1054554, at *2 (W.D.N.Y. March 6, 2019). Still, "[w]hat the Court may appropriately consider in deciding whether to impose a reduced sentence [under the First Step Act] is an open question that courts have answered differently." *Rose,* 379 F. Supp. 3d at 231. Courts generally agree that the First Step Act does not authorize a "de novo" or "plenary" resentencing, which requires the presence of the defendant, *see* Fed. R. Crim. P. 43, and allows for a full re-litigation of the sentence, including consideration of new facts and changes in the law unrelated to the reason for resentencing. *See United States v. Martinez,* No. 04-CR-48-20 (JSR), 2019 WL 2433660, at *3 (S.D.N.Y. June 11, 2019); *see also Shabazz v. United States,* 923 F.3d 82, 84 (2d Cir. 2019); *Rose,* 379 F. Supp. 3d at 231-32. The scope of the narrower re-sentencing contemplated by Section 404 of the First Step Act, however, is not entirely settled.[5]

The parties here agree that both the sentencing factors enumerated in 18 U.S.C. § 3553(a) factors and Morgan's post-sentencing conduct are relevant to Morgan's motion. *See* Def. Mot. at 4 (citing Morgan's post-sentencing conduct as facts relevant to the Court's assessment); Gov't Opp., Dkt. 223, at 4-5 (discussing the 18 U.S.C § 3553(a) sentencing factors and Morgan's

---

[5] *Compare Rose,* 379 F. Supp. 3d at 235. ("consideration of post-sentencing factual developments is appropriate under § 404 of the First Step Act.") *with United States v. Martin,* No. 03-CR-795 (BMC), 2019 WL 1558817, at *4 (E.D.N.Y. Apr. 10, 2019), *vacated on other grounds* (Apr. 22, 2019) ("A sentence reduction [under the First Step Act] triggers consideration of neither the sentencing factors articulated in 18 U.S.C. § 3553(a) nor post-sentencing conduct. . . .Instead, the proper consideration is whether a sentence reduction is consistent with congressional intent.").

5

disciplinary infractions in prison, but conceding that he is not a danger to society). The Court agrees that "the text of the First Step Act, read in conjunction with other sentencing statutes, requires the Court to consider all relevant facts, including developments since the original sentence," *Rose*, 2019 WL 2314479 379, at *7, and does so here.[6]

## II. Application

There is no dispute that Morgan is eligible for relief under the First Step Act and that accordingly, the decision to reduce Morgan's sentence falls within this Court's discretion. *See* Gov't Opp. at 1. Reviewing the record in light of the § 3553(a) factors, it is clear that a reduction of Morgan's sentence is appropriate.

Over the course of Morgan's more than ten years of incarceration, his good behavior earned him reassignment to a less restrictive prison than his initial maximum-security facility and allowed him to complete a variety of academic and vocational coursework, as well as rehabilitative programming addressing anger management, substance abuse, and post-incarceration re-entry into society. Def. Mot. at 4; Exs. 3 & 4.[7] This coursework demonstrates that Morgan's sentence, as served, has fulfilled § 3553(a)(2)(d)'s goal of providing the defendant with "needed educational or vocational training." It has also earned him a guaranteed job upon his release, *see* Def. Mot. Ex. 7., supporting § 3553(a)(2)'s goals of providing "adequate deterrence" and protecting the public from "further crimes of the defendant" by minimizing his chance of recidivism.

---

[6] *See also Pepper v. United States*, 562 U.S. 476, 480, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011); *Simons*, 375 F. Supp. 3d at 388.

[7] While Morgan's post-sentencing record is not perfect, he incurred both of his disciplinary infractions early in his term of incarceration. Def. Mot., Ex. 2; Gov. Opp. at 4.

Additionally, upon his release, Morgan will return to many family members with whom he has maintained a close relationship despite being in custody, including his son, United States Navy Officer Jaquon Morgan, who was 12-years-old when Morgan was sentenced. Def. Letter., Dkt. 230, at 1. Courts considering First Step Act motions have reduced the sentences of similarly situated defendants on consideration of their post-sentencing behavior, vocational advancement, strength of family relationships, and proven ability to successfully re-enter society upon release. *See United States v. Simons*, 375 F. Supp. 3d 379, 388-389 (E.D.N.Y. 2019); *Rose*, 379 F. Supp. 3d at 236.

The Government asks the Court to deny Morgan's motion because "Morgan received a below Guidelines sentence" Gov't Opp. at 4, and, in its view, "there are no additional factors that support a further reduction." *Id.* This position, however, ignores the congressional intent behind the Fair Sentencing Act, which recognized that, all else equal—including the seriousness of an offense or the critical role a given defendant played in it—the previous penalty structure for crack cocaine offenses was unfairly harsh, with a disproportionate impact on African-American defendants. *See Dorsey v. United States*, 567 U.S. 260, 268, 132 S.Ct. 2321, 183 L.Ed.2d 250 (2012); *Simons*, 375 F. Supp. 3d at 384.

While the Government argues that Morgan's original sentence of 180-months— significantly above the then 120-month mandatory minimum—suggests that the Court did not consider a ten-year sentence to be adequate in his case, courts repeatedly recognize that because "[s]tatutory minima and maxima have an obvious anchoring effect on the judge's determination of a reasonable sentence," *Simons*, 375 F. Supp. 3d at 387. (quoting *United States v. Currie*, 739 F.3d 960, 966 (7th Cir. 2014)), all else equal, a lower mandatory minimum typically leads to a lower sentence. *See United States v. Martin*, No. 03-CR-795 (BMC), 2019 WL 1558817, at *5

(E.D.N.Y. Apr. 10, 2019), *vacated on other grounds* (Apr. 22, 2019) ("I believe that, everything else being equal except the mandatory minimum defendant faced on Count 7, if defendant's Guidelines range had been lower at sentencing, Judge Trager would have sentenced him to less time."). Separate from the instant motion, Morgan's exemplary record of compliance with institutional disciplinary regulations would allow him to receive good time credit toward a reduced sentence of time served at 153-months; had Morgan initially received a shorter sentence, as courts suggest he would have had the amended guidelines been initially considered, his good time credit would result in a sentence only marginally longer than the 121-month sentence he now seeks. *See* Pub. L. 115-391, §102(b)(1)(A), 132 Stat. 5210, 5213.

Throughout his incarceration, Morgan has acted consistent with Judge Scheindlin's expressed hope that he "... behave[ ] in prison and [try] to benefit from programs while in prison, [try] to learn a trade, [and] [try] to get an education..." Sent. Tr. at 21, ¶¶ 22-25. Morgan has used his time in prison to improve himself, rising above the difficult and criminal family circumstances that prompted Judge Scheindlin to reduce his planned 232-month sentence to 180-months under the pre-existing guidelines and mandatory minimum. Sent. Tr. at 24, ¶¶ 2-6. Now, focusing on Morgan, the offense to which he pled guilty, and his present reality in light of the § 3553(a) factors, the Court concludes that Morgan has served enough time. A sentence reduction to time served, followed by four years of supervised release, is appropriate.[8]

## **CONCLUSION**

Morgan's motion for a sentencing reduction is GRANTED and his sentence is hereby reduced from 180 months of incarceration followed by 5 years of supervised release to time

---

[8] Morgan asks the Court to reduce his period of supervised release to three years, but the Fair Sentencing Act only reduces his statutory minimum term of supervised release from five years to four. *See* 21 U.S.C. § 841(b)(1)(B).

served, followed by 4 years of supervised release.

The Bureau of Prisons is authorized to delay execution of this Order for up to 30 days after its issuance so that the Bureau of Prisons may make necessary arrangements for the defendant to be received upon release, and to ensure that any other necessary notifications and formalities are accomplished. The Bureau of Prisons is authorized to release the defendant before the thirty-day delay has ended if the necessary arrangements, notifications, and formalities for release are completed earlier.

The Clerk of the Court is instructed to close the motions at Dkts. 214 and 219.

Dated: New York, New York
July 2̲3̲, 2019

SO ORDERED

*Paul A. Crotty*
PAUL A. CROTTY
United States District Judge